ROBBINS LLP
BRIAN J. ROBBINS (190624)
brobbins@robbinsarroy.com
CRAIG W. SMITH (164886)
csmith@robbinsllp.com
SHANE P. SANDERS (237146)
ssanders@robbinsllp.com
ASHLEY R. RIFKIN (246602)
arifkin@robbinsarroyo.com
STEVEN R. WEDEKING (235759)
swedeking@robbinsllp.com
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

WEISSLAW LLP
DAVID C. KATZ (admitted *pro hac vice*)
dkatz@weisslawllp.com
MARK D. SMILOW (*pro hac* to be filed)
msmilow@weisslawllp.com
JOSHUA RUBIN (*pro hac* to be filed)
jrubin@weisslawllp.com
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010

WEISSLAW LLP
Joel E. Elkins
jelkins@weisslawllp.com
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: (310) 208-2800
Facsimile (310) 209-2348

*[Proposed] Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE INC. STOCKHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Lead Case No. 4:19-cv-05153-YGR<br><br>(Consolidated with Cases No. 4:19-cv-05863-YGR, 4:19-cv-05881-YGR, and 4:19-cv-08246-YGR)<br><br>PLAINTIFFS TERRENCE ZEHRER, ANDREW FINE, TAMMY FEDERMAN SEP/IRA, AND THE ROSENFELD FAMILY FOUNDATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF ALAN BANKHALTER'S MOTION FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL |

**TABLE OF CONTENTS**

I. SUMMARY OF ARGUMENT ........ 1

II. BANKHALTER'S MOTION SHOULD BE DENIED ........ 4

A. Bankhalter's Counsel Lacks Experience Leading Derivative Actions ........ 4

1. GM&E lacks substantial experience and success leading derivative actions ........ 5

2. Pritzker Levine also lacks relevant experience in derivative litigation ........ 8

B. Bankhalter's Complaint Does Not Plead Standing and is Subject to Dismissal ........ 9

C. The Efforts of Counsel to Date do not Warrant the Appointment of Bankhalter's Counsel as Co-Lead Counsel ........ 111

D. Bankhalter Fails to Provide Any Relevant Information as to His Stockholdings ........ 13

E. Bankhalter's Request for Appointment of "Interim" Co-Lead Counsel Reflects his Counsel's Lack of Experience in Derivative Litigation and Should be Denied ........ 13

F. Bankhalter's Counsel Have Not Demonstrated that They Have the Resources Necessary to Lead the Prosecution of the Derivative Claims on Behalf of Apple ........ 14

III. CONCLUSION ........ 155

**Table of Authorities**

*Apple Inc. v. Superior Court*,
18 Cal. App. 5th 222 (2017) ........ 11

*Bader v. Anderson*,
179 Cal. App. 4th 775 (2009) ........ 12

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
845 A.2d 1040 (Del. 2004) ........ 12

*Berkowitz v. Fodor*, No. C 06-05353 JW,
2006 U.S. Dist. LEXIS 96065 (N.D. Cal. Nov. 20, 2006) ........ *passim*

*Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB,
2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) ........ 4

*Hacker v. Peterschmidt*, No. C 06-05353 JW,
2006 U.S. Dist. LEXIS 77325 (N.D. Cal. 1999) ........ 4

*Howard v. Everex*,
228 F.3d 1057 (9th Cir. 2000) ........ 8

*In re Asyst Techs., Inc. Derivative Litig.*, No. C-06-04669 EDL,
2008 U.S. Dist. LEXIS 41173 (N.D. Cal. May 23, 2008) ........ 10

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ........ 14

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 08 M.D.L, No. 1963 (RWS),
2008 U.S. Dist. LEXIS 106327 (S.D.N.Y. Dec. 29, 2008) ........ 14

*In re Computer Sciences Corp. Derivative Litig.*, No. CV 06–05288 MRP EX,
2007 U.S. Dist. LEXIS 25414 (C.D. Cal. Mar. 26, 2007) ........ 10

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009) ........ 4

*In re RINO Int'l Corp. Derivative Litig.*, Nos. 2:10–cv-02209:10–cv–02244,
2011 U.S. Dist. LEXIS 127488 (D. Nev. Nov. 2, 2011) ........ 9-10

*In re Rocket Fuel Inc. Derivative Litig.*, Case No. 15-cv-04625-PJH,
2016 U.S. Dist. LEXIS 115023 (N.D. Cal. Aug. 26, 2016) ........ 2, 9, 10

*In re Verisign, Inc., Derivative Litig.*,
531 F.Supp.2d 1173 (N.D. Cal. 2007) ........ 10

*In re Wells Fargo & Co. S'holder Derivative Litig.*, Case No.16-cv-05541-JST,
2017 U.S. Dist. LEXIS 5742 (N.D. Cal. Jan. 12, 2017) ........ 2, 4

*Lewis v. Chiles*,
719 F.2d 1044 (9th Cir. 1983) ........ 9

*Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 U.S. Dist. LEXIS 29876 (N.D. Cal. March 4, 2013) ........ 14

*Shenwick v. Twitter, Inc.*, Case No. 16-cv-05314-JST, 2016 U.S. Dist. LEXIS 177714 (N.D. Cal. Dec. 12, 2016) ........ 4

*Sokolowski v. Adelson*, 14–CV–111 JCM, 2014 U.S. Dist. LEXIS 103901 (D. Nev. July 30, 2014) ........ 9

*White v. Experian Info. Solutions*, 993 F. Supp. 2d 1154 (C.D. Cal. 2014) ........ 14

**Rules**

Federal Rules of Civil Procedure

23 ........ passim

23.1 ........ 9, 14

Plaintiffs Terrence Zehrer, Andrew Fine, Tammy Federman SEP/IRA, and the Rosenfeld Family Foundation (the "ZFFR Group"), through their undersigned counsel, respectfully submit this Opposition to Plaintiff Alan Bankhalter's Motion for the Appointment of Interim Co-Lead Counsel (ECF No. 21, "Bankhalter Motion").

## I.  SUMMARY OF ARGUMENT

All plaintiffs agree that the appointment of lead counsel in this consolidated derivative action is necessary to ensure that the litigation is conducted efficiently and effectively, with minimal duplication of effort. Bankhalter Motion at 6-7; Motion of Plaintiffs Terrence Zehrer, Andrew Fine, Tammy Federman SEP/IRA, and the Rosenfeld Family Foundation to Appoint Robbins LLP and WeissLaw LLP Co-Lead Counsel (ECF No. 23, "ZFFR Motion") at 6.

The ZFFR Group, which has a substantial, long-term, demonstrated financial interest in Apple Inc. ("Apple" or the "Company"), on whose behalf this litigation is brought, has moved for the appointment of its counsel, Robbins LLP ("Robbins") and WeissLaw LLP ("WeissLaw"), as co-lead counsel. The ZFFR Group's counsel have a long history of success litigating complex derivative actions like this one. They have brought that experience to bear here by filing high-quality pleadings that meet the pleading requirements of this district, initiating discussions regarding consolidation and a structure for the consolidated derivative action that led to agreement among three of the four groups of plaintiffs in the consolidated action, and vigorously acting to advance the litigation through a books and records demand made upon Apple. *See* Declaration of David C. Katz in Support of the ZFFR Motion (ECF No. 28, "Katz Support Declaration"), ¶¶ 7-10; Declaration of Craig W. Smith in Opposition to the Bankhalter Motion ("Smith Opp. Declaration"), ¶¶ 18-30.

Bankhalter, the only plaintiff who has not agreed to the ZFFR Group's proposed leadership structure, moves for the appointment of his New York counsel, Gainey McKenna & Egleston ("GM&E"), and his local counsel, Pritzker Levine, as "interim" co-lead counsel for the consolidated derivative action. Bankhalter's Motion lacks merit and should be denied.

While Bankhalter's counsel certainly appear to be fine attorneys, the most important consideration for this Court in determining lead counsel in this case should be counsel's experience and success in stockholder ***derivative*** litigation. *See, e.g., In re Wells Fargo & Co. S'holder Derivative Litig.*, Case No.16-cv-05541-JST, 2017 U.S. Dist. LEXIS 5742, at * 13 (N.D. Cal. Jan. 12, 2017) (in appointing lead counsel in a derivative action, the court considered the firms' "significant experience obtaining favorable results as lead counsel in ***shareholder derivative litigation***").[1] The firms Bankhalter proposes to lead this case – GM&E and Pritzker Levine – simply do not have the level of experience demonstrated by the ZFFR Group's counsel in successfully litigating complex derivative actions.

While GM&E claims to have substantial experience, it appears that the firm has only served as lead counsel in a handful of derivative cases, has engaged in limited actual litigation in the context of those few derivative actions, and has never obtained a monetary recovery as lead derivative counsel. Moreover, the derivative settlements to which GM&E points do not appear to derive from the firm's efforts – in all but one of the derivative actions cited by Bankhalter, the firm's co-lead counsel, not GM&E, performed the majority of the work. *See* Declaration of David C. Katz in Opposition to Bankhalter Motion ("Katz Opp. Declaration"), ¶¶ 4-10. Pritzker Levine seeks appointment as GM&E's co-lead counsel, but Pritzker Levine has even less experience in derivative litigation than GM&E.

This lack of relevant experience on the part of Bankhalter's counsel almost certainly was responsible for the fatal pleading error in Bankhalter's complaint. Bankhalter's complaint is subject to swift dismissal for failure to meet the Ninth Circuit pleading standard for standing, which requires the express pleading of the date upon which stock was acquired. *See, e.g., In re Rocket Fuel Inc. Derivative Litig.*, Case No. 15-cv-04625-PJH, 2016 U.S. Dist. LEXIS 115023, at * 11 (N.D. Cal. Aug. 26, 2016). This fundamental pleading error is all the more egregious in light of the fact that GM&E previously had a complaint dismissed in this district on this very ground, and that Pritzker Levine is moving to be appointed co-lead counsel based on its purported experience and expertise in this district. *Id.* The ZFFR

[1] All emphasis herein is added unless otherwise stated.

Group's counsel have litigated in this district for more than twenty years, are thoroughly familiar with the practices, and have filed complaints that meet the local requirements.

Recognizing his counsel's thin resume in leading large derivative actions, Bankhalter falsely states that his counsel has demonstrated their diligence by spurring discussion as to consolidation and a lead structure. Bankhalter Motion at 7-8. But those negotiations about case organization were initiated by ZFFR's counsel,[2] and, as a result, three out the four actions filed in this district have agreed to a leadership structure. Smith Opp. Decl., ¶¶ 18-30. ZFFR's counsel has also attempted to advance the action by making a books and records demand upon Apple for documents relevant to the matters at issue. Katz Support Decl., ¶¶ 7-10. The pleadings to date and counsel's respective efforts do not support the appointment of Bankhalter's counsel as co-lead counsel.

Finally, in an apparent acknowledgement that he does not own a substantial amount of Apple shares and/or faces significant issues with establishing derivative standing, Bankhalter argues that there is no significant difference between the plaintiffs in this litigation. But the ZFFR Group has specifically pleaded that it holds 8,084 shares of Apple stock, currently worth over $2.25 million, and that such stock has been held continuously since 2001, meaning that the ZFFR Group has standing to assert all of the claims at issue in the consolidated derivative action. Bankhalter pleaded no facts in his complaint regarding his purported ownership of Apple stock, and he did not include any of that information in his lead counsel motion. In addition to resulting in a deficient complaint, it also calls into question whether Bankhalter actually has standing to act derivatively on behalf of Apple here.

The ZFFR Group, long-term Apple stockholders with a demonstrated interest in the outcome of this litigation, has moved the Court to appoint its counsel – a team of attorneys who have worked together successfully in the past and who have substantial experience and a track record of success in derivative litigation – as Co-Lead Counsel. Bankhalter, who has provided no information whatsoever reflecting the extent or duration of his purported interest in Apple, presents two law firms that lack relevant experience

[2] Apart from a single email deferring "substantive" comments on the stipulation to consolidate the derivative actions to GM&E, ZFFR's counsel has had no interaction with Pritzker Levine. Smith Opp. Decl., ¶ 29; Katz Opp. Decl., ¶ 2.

- 3 -

PLAINTIFFS TERRENCE ZEHRER, ANDREW FINE, TAMMY FEDERMAN SEP/IRA, AND THE ROSENFELD FAMILY FOUNDATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ALAN BANKHALTER'S MOTION FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL 4:19-cv-05153-YGR

in successfully leading derivative litigation, do not appear to have worked with each other in the past, and have pled a fatally defective complaint and done little to advance the litigation to date. As such, the ZFFR Group respectfully submits that plaintiffs' and Apple's interests, on whose behalf this litigation is brought, are best served by the appointment of the ZFFR Group's counsel as co-lead counsel and the denial of Bankhalter's motion in its entirety.

## II. BANKHALTER'S MOTION SHOULD BE DENIED

### A. Bankhalter's Counsel Lacks Experience Leading Derivative Actions

Experience is an important factor repeatedly relied upon by courts in this District and the Ninth Circuit in making lead counsel appointments. The focus, however, is upon ***relevant*** experience, *i.e.*, success in the type of action being litigated, not general experience as an attorney. *See, e.g.*, *Wells Fargo*, 2017 U.S. Dist. LEXIS 5742, at * 13; *Hacker v. Peterschmidt*, No. C 06-05353 JW, 2006 U.S. Dist. LEXIS 77325 (N.D. Cal. 1999) (court considered firms' "extensive experience in prosecuting *shareholder derivative litigation*"); *Shenwick v. Twitter*, Inc., Case No. 16-cv-05314-JST, 2016 U.S. Dist. LEXIS 177714, at *7-8 (N.D. Cal. Dec. 12, 2016) (in appointing lead counsel in a securities class action, court noted that the appointed firm has "experience with securities class action cases, and has served as lead counsel in other *similar cases* in this district"); *Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538, at * 18-19 (S.D. Cal. Oct. 24, 2013) (court considered counsel's "extensive experience litigating *securities class actions*"); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 590 (C.D. Cal. 2009) (court considered the "firm's experience in *prior securities class actions*"); *Berkowitz v. Fodor*, No. C 06-05353 JW, 2006 U.S. Dist. LEXIS 96065, at * 6-7 (N.D. Cal. Nov. 20, 2006) (court considered the "firms' experience with similar shareholder actions").

The ZFFR Group's counsel have appeared as sole lead and co-lead counsel in large, high-profile, extensively litigated derivative actions. ZFFR Motion at 7-13. In those actions, the ZFFR Group's counsel actually played the leading role in securing substantial recoveries and non-monetary relief on

behalf of the corporations for which the actions were brought. *Id*. As discussed below, Bankhalter's counsel's relevant experience in shareholder derivative litigation pales in comparison.

**1. GM&E lacks substantial experience and success leading derivative actions**

GM&E claims to have experience serving as lead, co-lead, and "de facto" lead in thirteen "derivative, breach of fiduciary duty and securities actions and has produced substantial settlements on behalf of their clients." Bankhalter Motion at 11-12. But, as is clear from the Bankhalter Motion, GM&E has never secured a monetary recovery in resolving any derivative action in which it served as lead counsel. In contrast, the ZFFR Group's counsel have recovered hundreds of millions of dollars in derivative actions – including a recent settlement for which final approval is pending that would be the largest monetary recovery ever achieved in a derivative action concerning a data breach. Katz Support Decl., ¶¶ 2-5; Declaration of Craig W. Smith in Support of ZFFR Motion (ECF No. 24, "Smith Support Declaration") ¶¶ 5-10; ECF No. 29, Exhibit 1.

GM&E also repeatedly takes credit for other attorneys' hard work, including that of competing co-lead counsel, Craig Smith, of Robbins LLP. For example, GM&E highlights *In re Fifth Street Finance Corp., Stockholder Litig.*, C.A. No.: 12157-VCG (Del. Ch.), as a derivative case in which GM&E purportedly secured a substantial settlement as lead counsel. Bankhalter Motion at 11. But that case was resolved in the District of Connecticut, where Mr. Smith and the Robbins firm served as lead counsel. *In re Fifth Street Finance Corp. S'holder Derivative Litig.*, Lead Case No. 3:15-cv-01795-RNC (D. Conn.); Smith Opp. Decl., ¶¶ 2-14. In *In re Fifth Street*, Robbins coordinated the efforts of eight plaintiffs represented by ten law firms across three jurisdictions and negotiated a settlement that secured $30 million in advisory fee reductions and comprehensive corporate governance, conflicts management, and internal controls reforms. *Id. GM*&E accounted for less than one-fifth of the hours reported by plaintiffs' counsel in that action. Katz Opp. Decl., ¶ 4. The vast disparity in the number of hours expended by Robbins over that expended by GM&E and others in that case, and the relevant work that was done, was explained in the declaration filed in support of the settlement: "Robbins Arroyo's hours and lodestar are greater than those of the other firms listed largely because the firm performed or took the lead in performing many of

the tasks summarized above, and played a leading role in coordinating Plaintiffs' Counsel's strategy and work on certain shared tasks in order to maximize Plaintiffs' leverage and to avoid to the greatest extent possible inconsistent positions and duplicative effort." *Id*.

Bankhalter's reference to GM&E's co-lead counsel position in *In re Capstone Turbine Corp. Stockholder Derivative Litigation*, Civil Action No.: 16-cv-01569 (C.D. Cal.), also overstates the case. Robbins is counsel in *Stesiak v. Jamison*, Case No. BC610782 (Los Angeles Superior Court), one of five related derivative actions brought on behalf of Capstone Turbine Corporation. Smith Opp. Decl., ¶¶ 15-17. GM&E was one of four firms either designated co-lead counsel by agreement or acting as de facto lead counsel in their respective cases. *Id.* Following an in-person mediation and months of subsequent negotiations, the parties to the various actions reached agreement in principle on the material substantive terms of a global settlement of the related derivative actions. *Id.* The complete operative terms of the settlement have not yet been formalized in a stipulation of settlement. While the substance of the settlement negotiations cannot be disclosed, it would be safe to say that Robbins played the leading role and took the laboring oar for plaintiffs in the settlement negotiations, including supplying the comprehensive settlement demand that provided the framework for the parties' negotiations, leading the face-to-face mediation negotiations with defendants, controlling the documentation of the proposals and counter-proposals with defendants, and conducting the post-mediation negotiations, virtually unaided by fellow plaintiffs' counsel. *Id.* GM&E's role at every stage of the settlement negotiations was minor. *Id.*[3]

Overstating his counsel's roles in other cases is a theme that runs throughout Bankhalter's Motion. For example, Bankhalter cites *Recupero v. Friedli*, Civil Action No.: 1:17-cv-00381-PX (D. Md.), which was stayed, while the stipulation of settlement was filed in *Salley v. Debrabandere*, Civil Action No.: 1:17-cv-03777-ELH (D. Md.). GM&E accounted for about 14% of the hours reported by plaintiffs' counsel. Katz Opp. Decl., ¶ 5. Similarly, *Loyd v. Giles*, Case No.: 2015CV33429 (Colo., Denver County), was stayed in favor of *Oglina v. Macaluso*, Case No. 2:15-cv-5970-TJH-PJW (C.D. Cal.), in which little

[3] The parties have agreed, however, to present the settlement for court approval in the case in which GM&E is co-lead counsel.

litigation took place and, of the total of 532.4 hours reported by all plaintiffs' counsel, GM&E accounted for less than one-third. Katz Opp. Decl., ¶ 6. In *Emond v. Murphy*, 2:18-cv-09040 (C.D. Cal.), and *In re Provectus Biopharmaceuticals Inc. Derivative Litig.*, Civil Action No.: 3:14-cv-00372-PLR-HBG (E.D. Tenn.), GM&E accounted for less than one-third of the hours reported by all plaintiffs' counsel. Katz Opp. Decl., ¶¶ 7-8. In *Shane v. Edge, et al.*, Civil Action No.: 10-cv-50089 (N.D. Ill.), GM&E accounted for about a quarter of the hours reported by co-lead counsel. Katz Opp. Decl., ¶ 9. Of the thirteen cases cited by Bankhalter for which relevant records were located, it appears that GM&E accounted for the majority of the reported hours in only one, *Vacek v. Awad, et al.*, Civil Action No.: 2:17-cv-02820 (E.D. Pa.). In that case, the corporation entered bankruptcy after filing of the complaint, a mere 369.20 hours were reported, and a modest settlement was achieved. Katz Opp. Decl., ¶ 10.

Moreover, even a cursory review of the prior derivative litigations in which GM&E served as lead derivative counsel shows that the majority reflect little, if any, actual litigation.[4] The ZFFR Group's counsel, on the other hand, have engaged in hotly contested derivative litigation in which dozens of depositions were taken and numerous motions, including dispositive motions, were made and successfully litigated. ZFFR Motion at 7-13.

It is clear from the record that GM&E has never led the prosecution of an important, high-profile derivative action, has never engaged in extensive litigation in a derivative action, has never achieved a monetary recovery in a derivative action, and has worked but a fraction of the hours reported by all plaintiffs' counsel in the actions it claims to have led. While GM&E may well be made up of capable lawyers, they should not be leading this derivative litigation on behalf of Apple and its shareholders.

[4] Bankhalter cites *In re Marsh & McClennan Companies, Inc. Sec. Litig.*, Civil Action No.: 04-cv-8144 (CM) (S.D.N.Y.), as one of the securities class actions that a partner at GM&E worked on as an associate with a prior law firm. Undoubtedly, the leading of that litigation was undertaken by more senior members of that firm, and Bankhalter does not assert otherwise. GM&E also claims to have "made law" with "*its* successful prosecution of an appeal" to the Supreme Court in *Dudenhoeffer, et al. v. Fifth Third Bancorp.*, Civil Action No.: 08-cv-538 (S.D. Ohio). Bankhalter Motion at 9. However, GM&E's co-lead counsel reported more than 3.5 times the hours worked by GM&E in that case. Katz Opp. Decl., ¶ 11.

- 7 -

PLAINTIFFS TERRENCE ZEHRER, ANDREW FINE, TAMMY FEDERMAN SEP/IRA, AND THE ROSENFELD FAMILY FOUNDATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ALAN BANKHALTER'S MOTION FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL
4:19-cv-05153-YGR

**2. Pritzker Levine also lacks relevant experience in derivative litigation**

GM&E initially described Pritzker Levine's role in this action as Bankhalter's local counsel. Katz Opp. Decl., ¶ 2; Smith Opp. Decl., ¶ 29. Bankhalter now asks this Court to appoint his local counsel as co-lead counsel, which is a tacit concession that GM&E on its own cannot adequately perform the duties of lead counsel here. This conclusion is supported by GM&E's track record of performing only a fraction of the work and not taking a leadership role in the derivative actions it claims to have led. In support of his decision, Bankhalter argues that "[h]aving a lead counsel firm in this District knowledgeable about local practice will assist the Court, counsel, and the parties in the efficient and orderly conduct of the litigation." Bankhalter Br. at 14. But Robbins is based in San Diego, and one of its partners, Shane P. Sanders, has practiced out of its Northern California office for more than five years. Smith Opp. Decl., ¶ 31. David Katz, of WeissLaw, was responsible for briefing for the plaintiff's trial team in a securities class action lawsuit in this district, and the draftsman for the appellate briefing in the Ninth Circuit reversal of judgment entered in 2000. *Howard v. Everex*, 228 F.3d 1057 (9th Cir. 2000). Pritzker Levine does not bring any unique geographical advantages, and certainly nothing to warrant appointment as lead counsel in this derivative litigation.

Importantly, Pritzker Levine does not appear to have substantial experience serving as lead counsel in derivative actions, pointing to just two derivative actions in which the firm has ever been involved in any capacity. Bankhalter Motion at 9. This utter lack of relevant experience outweighs any potential benefits arising from a purportedly superior knowledge of local practice – particularly given the evidence in this litigation to date, with Bankhalter's complaint fatally failing to hew to local practice regarding the pleading of standing and thereby subjecting the complaint to summary dismissal. *See* § II.B, below. Experience in leading derivative litigation matters, and without that relevant experience, fatal errors can be made that jeopardize the viability of the action. It is for this reason that courts regularly focus on relevant experience in determining who should be appointed lead counsel. *See* § II.A, supra.

Finally, Pritzker Levine and GM&E do not assert that they have ever worked together in the past. In contrast, Robbins and WeissLaw have a strong working relationship that has served their clients

well. For example, in *In re Misonix, Inc. Stockholder Litigation*, Lead Case No. 2:17-cv-03385-ADS-AYS (E.D.N.Y.), WeissLaw and Robbins coordinated negotiations with the defendants to secure a suite of rigorous governance and internal controls reforms designed to strengthen the corporation's compliance with the Foreign Corrupt Practices Act. ZFFR Motion at 6 n.3.

**B. Bankhalter's Complaint Does Not Plead Standing and is Subject to Dismissal**

In appointing lead counsel, the Court must consider the quality of the pleadings. Here, the quality of the plaintiffs' respective pleadings to date further warrants denial of the Bankhalter Motion and the appointment of WeissLaw and Robbins as Co-Lead Counsel.

Federal Rule of Civil Procedure 23.1 governs derivative litigation and states "[t]he complaint must . . . allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law." Rule 23.1 has been interpreted to "require[] that a derivative plaintiff be a shareholder at the time of the alleged wrongful acts and that the plaintiff retain ownership of the stock for the duration of the lawsuit." *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983).

Here, the ZFFR Group filed the first complaint; filed a detailed, high quality pleading; and has pleaded each plaintiff's standing to bring suit in accordance with relevant Ninth Circuit authority by alleging the date upon which each plaintiff acquired Apple stock. Zehrer Complaint, ¶ 20; Fine Complaint, ¶¶ 17-19. Bankhalter's complaint, however, alleges only that he "is a current Apple shareholder during the relevant period" and "will continue to hold Apple shares throughout the pendency of" the litigation. Bankhalter Complaint, ¶ 23.

Courts in the Ninth Circuit interpret Rule 23.1(b) as requiring a plaintiff to precisely indicate the stock acquisition date in the complaint. *See, e.g., Rocket Fuel*, 2016 U.S. Dist. LEXIS 115023, at * 11 ("this court has previously held that the specific dates of stock purchase must be pled to establish standing under Rule 23.1"); *Sokolowski v. Adelson*, 14–CV–111 JCM, 2014 U.S. Dist. LEXIS 103901, at * 7 (D. Nev. July 30, 2014) ("[C]ourts in the Ninth Circuit have interpreted Rule 23.1(b) as requiring plaintiff to precisely indicate the stock acquisition date in the complaint."); *In re RINO Int'l Corp. Derivative Litig.*,

Nos. 2:10–cv-02209, 2:10–cv–02244, 2011 U.S. Dist. LEXIS 127488, at *6 (D. Nev. Nov. 2, 2011) ("Mere allegations that Plaintiffs 'have owned [a company's] stock during the Relevant Period ... and continue to own the Company's common stock' are insufficient"); *In re Asyst Techs., Inc. Derivative Litig.*, No. C-06-04669 EDL, 2008 U.S. Dist. LEXIS 41173, at * 4-5 (N.D. Cal. May 23, 2008) (dismissing for failing to satisfy pleading requirement of Fed. R. Civ. P. 23.1); *In re Verisign, Inc., Derivative Litig.*, 531 F.Supp.2d 1173, 1202 (N.D. Cal. 2007) (requiring the pleading of "the dates [plaintiffs] purchased VeriSign stock"); *In re Computer Sciences Corp. Derivative Litig.*, No. CV 06–05288 MRP EX, 2007 U.S. Dist. LEXIS 25414, at * 47-49 (C.D. Cal. Mar. 26, 2007) (holding that Plaintiffs' "general allegation is insufficient to allege contemporaneous ownership during the period in which the questioned transactions occurred").

Accordingly, the Bankhalter complaint is subject to summary dismissal for failure to comply with the long-standing pleading requirements of FRCP 23.1 and the Ninth Circuit. This pleading error is made all the more egregious by the fact that GM&E previously had a complaint dismissed in the Northern District of California on this very ground. *See Rocket Fuel Inc. Derivative Litig.*, 2016 U.S. Dist. LEXIS 115023, at * 11.

Bankhalter still has not revealed the date on which he purchased Apple stock, and, notably, he even failed to disclose it in connection with his lead counsel motion. In any event, Bankhalter's pleading deficiency now can only be cured through amendment of the complaint, and the information omitted by Bankhalter cannot now be supplied to the Court for the purpose of curing this defect. *See RINO Int'l*, 2011 U.S. Dist. LEXIS 127488, at * 6 n.1 ("Plaintiffs' statements as to the dates they purchased the stock in their response . . . are immaterial. It is axiomatic that the Court cannot consider additional facts first presented in Plaintiffs' response, but only facts in the complaint.").

The failure to plead the date upon which Apple shares were acquired is not a benign error. In addition to rendering Bankhalter's complaint subject to summary dismissal, it also could have serious ramifications as to demand futility, which would have to be established before Bankhalter could pursue the derivative claims on Apple's behalf. While courts typically consider demand based upon the

- 10 -

PLAINTIFFS TERRENCE ZEHRER, ANDREW FINE, TAMMY FEDERMAN SEP/IRA, AND THE ROSENFELD FAMILY FOUNDATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ALAN BANKHALTER'S MOTION FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL 4:19-cv-05153-YGR

composition of the board of directors as of the date of filing of the original complaint, the court in *Apple Inc. v. Superior Court*, 18 Cal. App. 5th 222 (2017) ("*Apple I"*), considered the board composition as of the date of the amended complaint because the claims were not previously "validly in litigation" due to pleading defects in the original complaint. *Id.* at 249. After conducting such an analysis, the court found that demand was not futile due to an intervening change in the composition of the board since the initial complaints were filed and dismissed the action. *Id.* at 258.

Here, the consolidated derivative action is stayed and, but for this briefing, Bankhalter likely would have remained unaware that he failed to adequately plead standing until Apple's eventual filing of a motion to dismiss. At that time, the composition of Apple's Board could – and likely would – have changed (for the worse, for demand futility purposes). Indeed, one of the Defendants named by Bankhalter, Robert Iger, has already left the Apple Board. But for the well-pled complaints by the ZFFR Group, Apple all but certainly would have argued that since Bankhalter's complaint was not validly in litigation due to his failure to plead standing, and the newly composed board would be the relevant body to consider when determining demand futility (just like it did in *Apple I*), undoubtedly making the already difficult standard for pleading demand futility even more challenging.

Knowledge of the applicable law is a relevant factor in determining lead counsel. Bankhalter Motion at 13-14. Bankhalter's pleading deficiency here would have led to dismissal of his complaint and could have jeopardized the viability of the entire derivative action had the ZFFR Group not filed proper pleadings. Bankhalter's counsel either is not familiar with the applicable law or simply ignored it – whichever one it is, the pleadings to date clearly demonstrate that Bankhalter's counsel should not be appointed to a leadership role in this important shareholder derivative action.

**C. The Efforts of Counsel to Date do not Warrant the Appointment of Bankhalter's Counsel as Co-Lead Counsel**

Bankhalter incorrectly argues that the firms have done relatively the same amount of work to date in this action. Robbins, one of the counsel proposed as co-lead by the ZFFR Group, led negotiations among plaintiffs' counsel and with defense counsel regarding initial scheduling and case management, and secured agreement on the terms of the Stipulation and Proposed Order to Consolidate and Stay Related

Actions and Setting Schedule on Motions for Leadership (ECF No. 19), which set out terms for consolidating the related stockholder derivative actions pending before this Court; staying defendants' obligation to respond to the complaints pending the outcome of motions to dismiss the related securities actions; and set deadlines for plaintiffs to agree or to move for appointment of lead counsel for plaintiffs. Smith Support Decl., ¶ 13. The ZFFR Group's counsel also led the discussions among all plaintiffs' counsel to reach a lead counsel structure that would best serve Apple's interests in the action, ultimately leading to agreement among all but one of the six plaintiffs in the four actions to support the leadership structure proposed by the ZFFR Group in its motion. Smith Support Decl., ¶ 14; Katz Support Decl., ¶ 9. Apart from a single email deferring "substantive" comments on the stipulation to consolidate the derivative actions to GM&E, ZFFR's counsel has had no interaction with Pritzker Levine. Smith Opp. Decl., ¶ 29; Katz Opp. Decl., ¶ 2.

Bankhalter claims that since the action is stayed, all of the plaintiffs' firms have probably done the same amount of work. Not so. WeissLaw, proposed as co-lead by the ZFFR Group, has invested substantial time and effort in making a books and records demand upon Apple for documents relevant to this action, as expressly authorized by the Stay Order. The making of a books and records demand is an important tool in derivative litigation that the Delaware courts, to which courts often look for persuasive authority[5], encourage litigants to pursue. *See, e.g., Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1056-57 (Del. 2004) ("Both this Court and the Court of Chancery have continually advised plaintiffs who seek to plead facts establishing demand futility that the plaintiffs might successfully have used a Section 220 books and records inspection to uncover such facts.").

Further, Plaintiff Zehrer filed the first complaint, and Bankhalter's complaint makes no material addition to the factual and legal claims asserted by Zehrer. Zehrer Complaint at ¶¶55-76 (alleging critical background facts concerning Apple's business structure (including the importance of the iPhone as Apple's flagship product), the improper scheme to throttle the battery performance of the iPhone through iOS

[5] *Bader v. Anderson*, 179 Cal. App. 4th 775, 791 n.5 (2009) (California courts find Delaware precedent instructive)

updates, and the Company's true exposure to various factors that threatened Apple's sales growth in Greater China, the Company's third-largest market); ¶¶77-104 (twelve pages detailing the specific misstatements and why each misstatement was false and misleading); Bankhalter Complaint at ¶¶42-129 (providing background on Apple's core operations, the Company's improper scheme to throttle the battery performance of the iPhone through iOS updates, the subsequent lawsuits and government investigations, and the growing threats to Apple's sales growth in China); ¶¶130-164 (detailing the false and misleading statements). Bankhalter's assertion that his counsel "develop[ed] the factual allegations and legal claims asserted" (Bankhalter Motion at 7) is simply false.

The facts show that the ZFFR Group has acted vigorously to protect Apple's interests. Bankhalter makes no such showing.

**D. Bankhalter Fails to Provide Any Relevant Information as to His Stockholdings**

Bankhalter argues that "since all four of the named plaintiffs are individual Apple shareholders, there is no significant difference among the named plaintiffs." Bankhalter Motion at 8. On the contrary, the members of the ZFFR Group have filed high quality pleadings establishing their standing to bring suit and have informed the Court of the precise amount and duration of their financial interest. By way of example, the Rosenfeld Family Foundation owns 6,000 shares and has continuously been an Apple stockholder since January 12, 2000. The ZFFR Group has a substantial interest in Apple and in this action, and has standing to assert claims arising over the last twenty years or more. On the other hand, plaintiff Bankhalter's Apple stockholdings remain a secret. There can be no doubt that the current record as to the plaintiffs' respective holdings of Apple stock supports the appointment of the ZFFR Group's counsel, not Bankhalter's counsel, as lead counsel in this litigation.[6]

**E. Bankhalter's Request for Appointment of "Interim" Co-Lead Counsel Reflects his Counsel's Lack of Experience in Derivative Litigation and Should be Denied**

Bankhalter moves the Court for the appointment of "interim" co-lead counsel. The Federal Rules of Civil Procedure provide for the appointment of "interim counsel" prior to *certification of a class* in a

---

[6] It bears noting that Bankhalter's complaint alleges conduct spanning back to January 11, 2012, a period of approximately eight years. Bankhalter Complaint at ¶ 46. Bankhalter's failure to allege the date

- 13 -

PLAINTIFFS TERRENCE ZEHRER, ANDREW FINE, TAMMY FEDERMAN SEP/IRA, AND THE ROSENFELD FAMILY FOUNDATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ALAN BANKHALTER'S MOTION FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL 4:19-cv-05153-YGR

*class action* brought pursuant to Fed. R. Civ. P. 23. *See* Fed. R. Civ. P. 23(g)(3) ("The court may designate interim counsel to act *on behalf of a putative class* before determining whether to *certify* the action as a *class action*"); Fed. R. Civ. P. 23 advisory committee notes (2003) (explaining that interim counsel should be appointed "if necessary to protect the interests of the *putative class*"); *White v. Experian Info. Solutions*, 993 F. Supp. 2d 1154, 1169 (C.D. Cal. 2014) ("Rule 23(g)(3) grants the Court authority to appoint pre-certification 'interim' *class* counsel"); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB; 2013 U.S. Dist. LEXIS 29876, at *34 (N.D. Cal. March 4, 2013) (appointing lead counsel in derivative case and "interim" lead counsel in related ERISA class action); *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 08 M.D.L, No. 1963(RWS), 2008 U.S. Dist. LEXIS 106327 (S.D.N.Y. Dec. 29, 2008) (appointing lead counsel for derivative action and "interim" lead counsel in related ERISA class action). This action is brought pursuant to Fed. R. Civ. P. 23.1, it is not a class action, there will be no certification of a class, and there is no authority requiring or need for the appointment of an interim class counsel for this derivative action.

**F. Bankhalter's Counsel Have Not Demonstrated that They Have the Resources Necessary to Lead the Prosecution of the Derivative Claims on Behalf of Apple**

Resources matter in complex shareholder derivative litigation. *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 258 F.R.D. 260, 272 (S.D.N.Y. 2009). In contrast to the ZFFR Group's detailed, fact-based showing as to the resources Robbins and WeissLaw will bring to bear (ZFFR Motion at 11-12), Bankhalter fails to address his counsel's resources, other than general and conclusory assurances that their resources are "sufficient," and that the firms have an "ability and willingness to dedicate substantial resources." Bankhalter Motion at 14. GM&E's website identifies 5 lawyers, and Pritzker Levine's website identifies 7 lawyers. Neither firm's website – nor the Bankhalter Motion – offers any information

when he first acquired Apple shares leaves open the distinct possibility that he did not simply make a pleading error, but instead is attempting to conceal the fact that he has not held Apple stock long enough to have standing to assert all of his derivative claims.

- 14 -

PLAINTIFFS TERRENCE ZEHRER, ANDREW FINE, TAMMY FEDERMAN SEP/IRA, AND THE ROSENFELD FAMILY FOUNDATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ALAN BANKHALTER'S MOTION FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL
4:19-cv-05153-YGR

regarding specific details concerning those firms' support staffs or their document management and search capabilities.

Robbins, by contrast, possesses the lawyers, professional staff, and information technology resources necessary to prosecute this litigation vigorously and effectively through the pleading stage and beyond. ZFFR Motion at 11 (discussing Robbins' 17 full-time attorneys (plus 8 staff attorneys), including 8 partners with more than ten years of experience in complex litigation, and 8 associates; 10 corporate research clerks, who assist the attorneys with factual research and other related matters, as well as 6 paralegals, and 20 support staff). In addition, and of critical importance in what promises to be a document intensive case, Robbins maintains superior document management and search engine capability, as described in the ZFFR Motion. *Id.* at 11.

Likewise, WeissLaw has substantial resources to prosecute this litigation effectively, efficiently, and vigorously. WeissLaw has 14 attorneys, of which four are Principals with over twenty (20) years of experience, and three paralegals/clerks. WeissLaw's resources have enabled the firm to litigate document-intensive cases that have proceeded to full discovery, including a derivative action brought for Freddie Mac involving over 70 depositions. ZFFR Motion at 12-13.

## III. CONCLUSION

For the foregoing reasons, the ZFFR Group respectfully submits that the Court should deny Bankhalter's Motion for Appointment of Interim Co-Lead Counsel in its entirety and, instead, should appoint Robbins and WeissLaw as Co-Lead Counsel for plaintiffs in the Consolidated Derivative Action.

DATED: May 5, 2020

ROBBINS LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
SHANE P. SANDERS
ASHLEY R. RIFKIN
STEVEN R. WEDEKING

*/s/ Shane P. Sanders*
SHANE P. SANDERS

- 15 -

PLAINTIFFS TERRENCE ZEHRER, ANDREW FINE, TAMMY FEDERMAN SEP/IRA, AND THE ROSENFELD FAMILY FOUNDATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ALAN BANKHALTER'S MOTION FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL
4:19-cv-05153-YGR

5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
csmith@robbinsllp.com
ssanders@robbinsllp.com
arifkin@robbinsllp.com
swedeking@robbinsllp.com

*Counsel for Plaintiff Terrence Zehrer and [Proposed] Co-Lead Counsel*

Dated: May 5, 2020

WEISSLAW LLP
DAVID C. KATZ (admitted *pro hac vice*)
MARK D. SMILOW (*pro hac* to be filed)
JOSHUA RUBIN (*pro hac* to be filed)

*/s/ David C. Katz*
DAVID C. KATZ

1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
E-Mail: dkatz@weisslawllp.com
msmilow@weisslawllp.com
jrubin@weisslawllp.com

WEISSLAW LLP
Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: (310) 208-2800
Facsimile (310) 209-2348
E-mail: jelkins@weisslawllp.com

*Counsel for Plaintiffs Andrew Fine, Tammy Federman SEP/IRA, and The Rosenfeld Family Foundation and [Proposed] Co-Lead Counsel*

- 16 -

PLAINTIFFS TERRENCE ZEHRER, ANDREW FINE, TAMMY FEDERMAN SEP/IRA, AND THE ROSENFELD FAMILY FOUNDATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ALAN BANKHALTER'S MOTION FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL
4:19-cv-05153-YGR