# EXHIBIT A

ROBBINS LLP
BRIAN J. ROBBINS (190624)
brobbins@robbinsllp.com
CRAIG W. SMITH (164886)
csmith@robbinsllp.com
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-399

WEISS LAW LLP
Joel E. Elkins
jelkins@weisslawllp.com
David C. Katz (admitted *Pro Hac Vice*)
dkatz@weisslawllp.com
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010

*Co-Lead Counsel for Federal Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| IN RE APPLE INC. STOCKHOLDER DERIVATIVE LITIGATION | Case No. 4:19-cv-05153-YGR |
|---|---|
| | **STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT, AND RELEASE** |

This Stipulation and Agreement of Compromise, Settlement, and Release dated as of February 8, 2024 (the "Stipulation"), is entered into by and among (a) plaintiffs and intervening plaintiffs in the above-captioned stockholder derivative action (the "Federal Action") pending in the United States District Court for the Northern District of California, Oakland Division (the "Federal Court"), styled as *In re Apple Inc. Stockholder Derivative Litigation*, Case No. 4:19-cv-05153-YGR: Terrence Zehrer, derivatively on behalf of Apple Inc. ("Apple"); Andrew Fine,

Tammy Federman SEP/IRA, and The Rosenfeld Family Foundation, derivatively on behalf of Apple; and John Votto, derivatively on behalf of Apple (collectively, the "Federal Plaintiffs"); (b) plaintiffs in the stockholder derivative action pending in the Superior Court of the State of California, County of Santa Clara (the "California Court"), styled as *In re Apple Inc. Stockholder Derivative Litigation*, Lead Case No. 19CV355213 (the "California Action"): Tim Himstreet, derivatively on behalf of Apple; and Steven Hill, derivatively on behalf of Apple (collectively, the "California Plaintiffs"); (c) Apple shareholders Augustin Sacks and Gerard Bernales, who made a litigation demand on Apple's board of directors (the "Demanding Shareholders" and, together with the Federal Plaintiffs and California Plaintiffs, "Plaintiffs"); (d) defendants in the Federal Action and/or the California Action: Timothy D. Cook; Luca Maestri; Craig Federighi; Arthur D. Levinson; Albert Gore, Jr.; Andrea Jung; James A. Bell; Ronald D. Sugar; Robert A. Iger; and Susan L. Wagner (collectively, "Defendants"); and (e) nominal defendant Apple ("Nominal Defendant," "Apple," or the "Company" and, together with Plaintiffs and Defendants, the "Parties"), by and through their respective undersigned counsel.  Subject to the approval of the Federal Court and the terms and conditions expressly provided herein, this Stipulation is intended to fully, finally, and forever settle the Settled Plaintiffs' Claims as against the Released Defendants' Parties, as those capitalized terms are defined below.

FEDERAL COURT PROCEEDINGS

WHEREAS, on August 19, 2019, an Apple stockholder commenced a stockholder derivative action in Federal Court captioned as *Zehrer v. Cook, et al.*, Case No. 4:19-cv-05153 (the "*Zehrer* Action") against defendants Cook, Maestri, Federighi, Levinson, Gore, Jung, Bell, Sugar, Iger, and Wagner alleging, among other things, that Defendants breached their fiduciary duties (i) by causing or allowing the Company to address the effects of aging iPhone batteries by disseminating iOS software updates designed to slow iPhone performance without customer knowledge or consent in violation of consumer protection laws and regulations in domestic and international markets, and (ii) by making false and misleading statements to investors about the

effects of aging iPhone batteries on iPhone sales growth and about iPhone demand in the Greater China region;

WHEREAS, on September 20, 2019, plaintiffs Andrew Fine, Tammy Federman SEP/IRA, and The Rosenfeld Family Foundation, commenced a derivative action in Federal Court captioned as *Fine, et al. v. Cook, et al.*, Case No. 4:9-cv-05863 (the "*Fine* Action") asserting claims similar to the *Zehrer* Action, as well as claims for violation of the federal securities laws, based on the same facts and circumstances alleged in the *Zehrer* Action;

WHEREAS, on September 20, 2019, plaintiff Alan Bankhalter commenced a derivative action in Federal Court captioned as *Bankhalter v. Cook, et al.*, Case No. 4:19-cv-05881 (the "*Bankhalter* Action") asserting claims similar to the *Zehrer* Action, as well as claims for violation of the federal securities laws, based on the same facts and circumstances alleged in the *Zehrer* Action;

WHEREAS, on September 20, 2019, plaintiff John Votto commenced a derivative action in Federal Court captioned as *Votto v. Cook, et al.*, Case No. 4:19-cv-08246 (the "*Votto* Action") asserting claims similar to the Zehrer Action, as well as claims for violation of the federal securities laws, based on the same facts and circumstances alleged in the *Zehrer* Action;

WHEREAS, on March 6, 2020, the parties filed a stipulation to consolidate the *Zehrer* Action, *Fine* Action, *Bankhalter* Action, and *Votto* Action and to appoint lead counsel;

WHEREAS, on March 11, 2020, the Federal Court entered an order relating the *Zehrer* Action, *Fine* Action, *Bankhalter* Action, and *Votto* Action and consolidating the actions (hereafter, the "Federal Action");

WHEREAS, on April 14, 2020, Bankhalter filed a motion to appoint Pritzker Levine LLP and Gainey McKenna & Egleston as interim co-lead counsel;

WHEREAS, on April 14, 2020, plaintiffs Terrence Zehrer, Andrew Fine, Tammy Federman SEP/IRA, and The Rosenfeld Family Foundation filed a motion to appoint Robbins LLP and Weiss Law LLP as co-lead counsel for all derivative plaintiffs in the Federal Action ("Lead Counsel Motion");

STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT, AND RELEASE

WHEREAS, on June 29, 2020, following briefing on the competing lead counsel motions, the Federal Court granted plaintiffs Terrence Zehrer, Andrew Fine, Tammy Federman SEP/IRA, and The Rosenfeld Family Foundation's Lead Counsel Motion;

WHEREAS, on July 1, 2020, plaintiff Bankhalter filed a notice for voluntary dismissal of the *Bankhalter* Action, which the Federal Court granted on July 6, 2020;

WHEREAS, on August 11, 2020, the parties to the Federal Action filed a stipulation and proposed order to stay the Federal Action pending resolution of the motion to dismiss the related federal securities class action pending in the United States District Court for the Northern District of California, Oakland Division, *In re Apple Inc. Securities Litigation*, Case No. 4:19-cv-02033-YGR (the "Federal Securities Action"), subject to Federal Plaintiffs' rights to file a consolidated complaint and to seek to inspect the Company's books and records pursuant to California Corporations Code section 1601, and to the parties' obligation to meet and confer regarding Federal Plaintiffs' participation in any mediation and any discovery conducted in connection with the Federal Securities Action, which the Federal Court granted on August 18, 2020;

WHEREAS, on January 21, 2021, following the partial denial of the motion to dismiss the related Federal Securities Action, the parties to the Federal Action filed a stipulation and proposed order to extend the stay of the Federal Action until 30 days following the close of fact discovery in the Federal Securities Action, subject to the Company's commitment to participate in a mediation of the derivative claims in the event of any mediation in the Federal Securities Action or other action arising from the same or similar facts; designation of the board of directors as constituted on August 19, 2019, as the relevant set of directors for purposes of evaluating Federal Plaintiffs' demand futility allegations; and preservation of Federal Plaintiffs' right to file a consolidated amended complaint, which the Federal Court granted on January 25, 2021;

WHEREAS, on May 31, 2022, the parties to the Federal Action filed a stipulation and proposed order to continue the stay of the Federal Action subject to substantially similar terms and conditions, which the Federal Court granted on June 7, 2022;

WHEREAS, on August 15, 2022, the parties to the Federal Action filed a stipulation and proposed order to continue the stay of the Federal Action subject to substantially similar terms and conditions, which the Federal Court granted on August 17, 2022;

WHEREAS, on October 14, 2022, the parties to the Federal Action filed a stipulation to continue the stay of the Federal Action subject to substantially similar terms and conditions, which the Federal Court granted on October 14, 2022;

WHEREAS, after meeting and conferring regarding a proposed schedule for further proceedings following the February 1, 2023 expiration of the preceding stay, on March 20, 2023, the parties to the Federal Action filed a stipulation to set a briefing schedule for Nominal Defendant Apple's motion to dismiss the action under Federal Rule of Civil Procedure 23.1, which the Federal Court granted on March 27, 2023;

WHEREAS, on May 19, 2023, the parties to the Federal Action filed a stipulation extending Federal Plaintiffs' time to complete their ongoing investigation of matters relevant to their allegations and to file their consolidated complaint, which the Federal Court granted on May 23, 2023;

WHEREAS, on October 5, 2023, the parties to the Federal Action filed a stipulation advising the Federal Court that they had executed a memorandum of understanding to settle the litigation, and commenced negotiations regarding formal stipulation of settlement to be presented for the Federal Court's approval;

WHEREAS, pursuant to the Federal Court's October 26, 2023 Order Setting Compliance Deadline, on November 17, 2023, the parties to the Federal Action further advised the Federal Court regarding the status of their negotiations regarding a stipulation of settlement and all exhibits thereto;

WHEREAS, on November 20, 2023, the Federal Court entered an Order Setting Compliance Deadline Re: Settlement, requiring the filing of a motion for preliminary approval of the settlement or a joint statement explaining any noncompliance on or before January 26, 2024;

STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT, AND RELEASE

WHEREAS, pursuant to the Federal Court's November 20, 2023 Order Setting Compliance Deadline, on January 16, 2024, the parties to the Federal Action further advised the Federal Court regarding the status of their negotiations regarding a stipulation of settlement and all exhibits thereto; and

WHEREAS, on January 19, 2024, the Federal Court entered an Order Setting Compliance Deadline Re: Settlement, requiring the filing of a motion for preliminary approval of the settlement or a joint statement explaining any noncompliance on or before March 8, 2024;

CALIFORNIA COURT PROCEEDINGS

WHEREAS, on September 17, 2019, plaintiff Tim Himstreet filed a derivative action in California Court captioned as *Himstreet v. Cook, et al.*, Case No. 19CV355213 (the "*Himstreet* Action") asserting claims similar to those raised in the Federal Action;

WHEREAS, on September 30, 2019, the parties to the *Himstreet* Action filed a stipulation and proposed order to stay the *Himstreet* Action on terms similar to those in the Federal Action, which the California Court granted on October 1, 2019;

WHEREAS, on March 11, 2020, the parties to the *Himstreet* Action filed a stipulation to continue the stay of the *Himstreet* Action, which the California Court granted on March 11, 2020;

WHEREAS, on August 12, 2020, the parties to the *Himstreet* Action filed a stipulation to continue the stay of the *Himstreet* Action, which the California Court granted on August 13, 2020;

WHEREAS, on August 17, 2020, plaintiff Steven Hill filed a derivative action in California Court captioned as *Hill v. Cook, et al.*, 20CV369387 (the "*Hill* Action") asserting claims similar to those raised in the Federal Action;

WHEREAS, on November 16, 2020, the California Court entered an order consolidating the *Himstreet* Action and *Hill* Action (hereafter, the "California Action") and continuing the case management conferences in the respective actions;

WHEREAS, on January 21, 2021, the California Court ordered to extend the stay of the California Action;

STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT, AND RELEASE

WHEREAS, on February 10, 2022, the California Court ordered to continue the case management conference;

WHEREAS, on May 5, 2022, the California Court ordered to continue the case management conference for the California Action;

WHEREAS, on July 1, 2022, the California Court ordered to continue the stay of the California Action and continue the case management conference;

WHEREAS, on October 6, 2022, the California Court ordered to continue the stay of the California Action and continue the case management conference;

WHEREAS, on February 14, 2023, the California Court ordered to continue the case management conference for the California Action; and

WHEREAS, on March 24, 2023, the California Court ordered to continue the case management conference for the California Action and ordered that the discovery and responsive pleading stay remain in place pending further order of the California Court;

SHAREHOLDER LITIGATION DEMAND

WHEREAS, on November 13, 2018, the Demanding Shareholders made a litigation demand on Apple's board of directors asserting claims similar to those raised in the Federal Action (the "Demand"); and

WHEREAS, on December 9, 2018, Apple's board formed an advisory Demand Evaluation Committee ("DEC") to review and investigate the Demand, with the advice of independent counsel, and report back to the full board concerning its conclusions and recommendations;

THE PARTIES REACHED THE SETTLEMENT THROUGH MEDIATOR FACILITATED ARM'S-LENGTH NEGOTIATIONS

WHEREAS, the Parties agreed to participate in a mediation session on January 31, 2022, before (Hon.) Layn Phillips of Phillips ADR (the "Mediator"), a nationally recognized mediator with extensive experience mediating complex shareholder disputes similar to the Actions;

WHEREAS, on January 28, 2022, the plaintiffs in the Federal Action and California Action submitted a mediation statement, made a settlement demand on Defendants, and requested certain documents, which Defendants agreed to provide;

WHEREAS, the Parties did not reach an agreement resolving the derivative litigation during the January 31, 2022 mediation session, but agreed to continue their settlement discussions under the aegis of the Mediator;

WHEREAS, counsel for the Parties participated in another, in-person mediation session before the Mediator on April 6, 2023.  At the mediation session, the Parties engaged in discussions regarding the strengths and weaknesses of the claims and defenses at issue, both indirectly through the Mediator and directly in joint sessions attended by counsel for the Parties and the relevant insurers.  During the joint sessions, the Company provided detailed confidential information regarding the technical and practical considerations that drove its decision-making with respect to the iOS performance management updates.  The parties debated their competing views of the essential facts, legal claims and defenses, and the broad range of possible litigation outcomes.  The parties also discussed a range of remedial options and were able to agree on a set of principles and target areas for corporate governance enhancements to flesh out through further negotiations;

WHEREAS, the Parties continued their mediation efforts for several months following the April 2023 in-person mediation session, during which the Parties exchanged written proposals and counter proposals with the assistance and guidance of the Mediator;

WHEREAS, the Parties ultimately reached an agreement in principle on the material substantive consideration for the Settlement, and negotiated the terms of a written memorandum of understanding outlining the essential terms and conditions for the release of all claims asserted in the Actions in consideration for Apple's agreement to adopt, implement, and/or maintain the corporate governance and oversight enhancements as set forth in Exhibit A hereto (the "Enhancements");

WHEREAS, after reaching agreement on the substantive material terms of the Settlement, the Parties commenced negotiations facilitated by the Mediator regarding reasonable attorneys'

fees and expenses to be paid to Plaintiffs' Counsel, subject to Court approval, in consideration for the substantial benefits conferred upon Apple and its shareholders by the Settlement; and

WHEREAS, this Stipulation (together with the exhibits hereto), which has been duly executed by the undersigned signatories on behalf of their respective clients, reflects the final and binding agreement by and among the Parties;

THE PARTIES AGREE THE SETTLEMENT CONFERS SUBSTANTIAL BENEFITS AND SERVES THE BEST INTERESTS OF APPLE AND ITS SHAREHOLDERS

WHEREAS, Plaintiffs brought their claims in good faith and continue to believe that their claims have merit but, based upon Plaintiffs' and Plaintiffs' Counsel's investigation and prosecution of the Actions, Plaintiffs and Plaintiffs' Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate, and in the best interests of the Company and its shareholders;

WHEREAS, based on Plaintiffs' oversight of the prosecution of this matter and with the advice of their counsel, Plaintiffs have agreed to settle and release the claims asserted in the Actions pursuant to the terms and provisions of this Stipulation, after considering (a) the substantial benefits conferred upon Apple and its shareholders through the corporate governance protections provided under the proposed Settlement; and (b) the desirability of guaranteeing those benefits by permitting the Settlement to be consummated as provided by the terms of this Stipulation, and avoiding the uncertainties, delays, costs, and substantial risks entailed in further litigation;

WHEREAS, Defendants have denied, and continue to deny, that they committed, or aided and abetted in the commission of, any violation of law or duty or engaged in any wrongful acts whatsoever, including specifically those alleged in the Actions, and expressly maintain that they have complied with their statutory, fiduciary, and other legal duties, and that at all relevant times they acted in good faith and in a manner they reasonably believed to be in the best interests of Apple and its shareholders;

WHEREAS, Defendants have also taken into account the burden, expense, and uncertainties inherent in further litigation, and have therefore determined that it is in the best interests of the Company for the Actions to be settled in the manner and upon the terms and conditions set forth in this Stipulation;

WHEREAS, the Board, including each of its independent, non-employee directors (including the members of the DEC), advised by outside counsel for the Company, has unanimously approved a resolution reflecting the Board's determination, in the good faith exercise of its business judgment, that the Settlement confers substantial benefits upon Apple and its shareholders, and that the Settlement and each of its terms are fair and reasonable and serve the best interests of Apple and its shareholders; and

WHEREAS, each of the Parties recognizes and acknowledges that the Actions have been initiated, filed, and prosecuted by Plaintiffs in good faith and defended by Defendants in good faith, that the Actions are being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, reasonable, and adequate.

**NOW THEREFORE, IT IS STIPULATED AND AGREED**, by and among the Parties, by and through their respective undersigned counsel, in consideration of the benefits flowing from the Settlement, that all Settled Claims (as defined below) shall be and hereby are fully and finally settled, compromised, and released, and that the claims against Defendants in the Derivative Actions shall be dismissed with prejudice, upon and subject to the terms and conditions of this Stipulation, as follows:

## CERTAIN DEFINITIONS

1.    As used in this Stipulation and all exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

(a)    "Actions" or "Derivative Actions" means the Federal Action, the California Action, and the Demand.

(b)    "Apple," "Nominal Defendant," or the "Company" means Apple Inc.

(c)     "Apple's Counsel" means the law firm of Orrick, Herrington & Sutcliffe LLP.

(d)     "Board" means Apple's Board of Directors.

(e)     "California Action" means the shareholder derivative action captioned *In re Apple Inc. Stockholder Derivative Litigation*, Lead Case No. 19CV355213, pending in California Court.

(f)     "California Complaints" means the Verified Shareholder Derivative Complaints, dated September 17, 2019 and August 17, 2020, filed in the California Action.

(g)     "California Court" means the Superior Court of the State of California in the County of Santa Clara.

(h)     "California Plaintiffs" means Tim Himstreet and Steven Hill.

(i)     "Claims" means any and all manner of claims, including any Unknown Claims, debts, demands, rights, interests, actions, suits, causes of action, cross-claims, counter-claims, charges, judgments, obligations, setoffs, or liabilities for any obligations of any kind whatsoever (however denominated), for fees, costs, penalties, damages whenever incurred, and liabilities of any nature whatsoever (including, without limitation, demands for rescission, damages, interest, attorneys' fees, and any other costs, expenses or liabilities whatsoever, including joint and several), whether based on federal, state, local, statutory or common law, in equity, or on any other law, rule, regulation, ordinance, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured.

(j)     "Complaints" means the Federal Complaints and the California Complaints.

(k)     "Current Apple Shareholders" means any person or entity that has held Apple common stock as of the date of the execution of this Stipulation and continues to hold their Apple common stock through the date of the Settlement Fairness Hearing.

(l)     "Defendants" means the following current and former defendants in the Federal Action and/or the California Action:  Timothy D. Cook, Luca Maestri, Craig Federighi,

- 11 -

Arthur D. Levinson, Albert Gore, Jr., Andrea Jung, James A. Bell, Ronald D. Sugar, Robert A. Iger, and Susan L. Wagner.

(m)     "Defendants' Counsel" means the law firm of Orrick, Herrington & Sutcliffe LLP, counsel for defendants Timothy D. Cook, Luca Maestri, Craig Federighi, Arthur D. Levinson, Albert Gore, Jr., Andrea Jung, James A. Bell, Ronald D. Sugar, Robert A. Iger, and Susan L. Wagner.

(n)     "Demanding Shareholders" means Augustin Sacks and Gerard Bernales.

(o)     "Demanding Shareholders' Counsel" means the law firm of Purcell & Lefkowitz LLP.

(p)     "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in paragraph 24 of this Stipulation have been met and have occurred or have been waived.

(q)     "Federal Action" means the stockholder derivative action captioned *In re Apple Inc. Stockholder Derivative Litigation*, No. 4:19-cv-05153-YGR, pending in the Federal Court.

(r)     "Federal Complaints" means the Verified Stockholder Derivative Complaints dated August 19, 2019 and September 20, 2019, filed in the Federal Action.

(s)     "Federal Court" or "Court" means the United States District Court for the Northern District of California, Oakland Division.

(t)     "Federal Securities Action" means the securities class action captioned *In re Apple Inc. Securities Litigation*, Case No. 4:19-cv-02033-YGR, pending in the Federal Court.

(u)     "Federal Plaintiffs" means Terrence Zehrer, derivatively on behalf of Apple; Andrew Fine, Tammy Federman SEP/IRA, and The Rosenfeld Family Foundation, derivatively on behalf of Apple; and John Votto, derivatively on behalf of Apple.

(v)     "Final" with respect to the Judgment or any other court order means:  (i) if no appeal is filed, the expiration date of the time for filing or noticing of any appeal of the Judgment or order; or (ii) if there is an appeal from the Judgment or order, (a) the date of final dismissal of

all such appeals, or the final dismissal of any proceeding on *certiorari* or otherwise, or (b) the date the Judgment or order is finally affirmed on appeal, the expiration of the time to file a petition for a writ of *certiorari* or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to attorneys' fees or expenses shall not in any way delay or preclude the Judgment from becoming Final.

(w)     "Enhancements" means the corporate governance enhancements identified in Exhibit A hereto.

(x)     "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit C, to be entered by the Federal Court approving the Settlement.

(y)     "Notice" means, collectively, the Notice of Pendency and Proposed Settlement of Shareholder Derivative Actions, substantially in the form attached hereto as Exhibit B-1 ("Long Form Notice), and the Summary Notice of Proposed Settlement of Shareholder Derivative Actions, substantially in the form attached hereto as Exhibit B-2 ("Summary Notice").

(z)     "Notice Costs" means all costs, fees, and expenses related to providing notice of the Settlement to Current Apple Shareholders.

(aa)    "Parties" means Plaintiffs, Defendants, and the Company.

(bb)    "Plaintiffs" means the Federal Plaintiffs, the California Plaintiffs, and the Demanding Shareholders.

(cc)    "Plaintiffs' Counsel" means the law firms of Robbins LLP, Weiss Law LLP, Glancy Prongay & Murray LLP, Herman Jones LLP, The Mehdi Firm, PC, and Purcell & Lefkowitz LLP.

(dd)    "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit B, to be entered by the Court, preliminarily approving the Settlement, scheduling the Settlement Fairness Hearing, and directing that notice of the Settlement be provided to Current Apple Shareholders.

STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT, AND RELEASE

(ee)   "Released Defendants' Parties" means Defendants, the Company, and any entity in which the Company has a controlling interest, as well as their respective current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, committees, joint ventures, trustees, trusts, employees, immediate family members, insurers and reinsurers (in their capacities as such), consultants, experts, and attorneys.

(ff)   "Released Parties" means the Released Defendants' Parties and the Released Plaintiffs' Parties.

(gg)   "Released Plaintiffs' Parties" means Plaintiffs, Plaintiffs' Counsel, and any entity in which any Plaintiff has a controlling interest, as well as their respective current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, committees, joint ventures, trustees, trusts, employees, immediate family members, insurers and reinsurers (in their capacities as such), consultants, experts, and attorneys.

(hh)   "Releases" means the releases set forth in paragraphs 4-7 of this Stipulation.

(ii)   "Settled Claims" means the Settled Defendants' Claims, the Settled Plaintiffs' Claims, and the Settled Litigation Claims.

(jj)   "Settled Defendants' Claims" means all Claims that arise out of, are based upon, or relate to the commencement, litigation, or settlement of the Actions; *provided, however*, that the Settled Defendants' Claims shall not include any Claims arising out of, based upon, or relating to the enforcement of the Settlement.

(kk)   "Settled Litigation Claims" means all Claims against any of the Released Parties, concerning, arising from, or relating to the commencement, litigation, or settlement of the Claims asserted in the Actions; *provided, however*, that the Settled Litigation Claims shall not include any Claims arising out of, based upon, or relating to the enforcement of the Settlement.

(ll)   "Settled Plaintiffs' Claims" means any and all manner of Claims, including Unknown Claims, that have been or could have been asserted in any forum derivatively or by

STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT, AND RELEASE

1  Apple directly, arising from any act or omission alleged or claims asserted in the Actions;

2  *provided, however*, that the Settled Plaintiffs' Claims shall not include any Claims arising out of,

3  based upon, or relating to the enforcement of the Settlement.  For the avoidance of doubt, the

4  Settled Plaintiffs' Claims do not cover, settle, or release any direct claims held by a Plaintiff as a

5  member of the certified class in the Federal Securities Action.

6         (mm)   "Settlement" means the settlement by and among the Parties on the terms

7  and conditions set forth in this Stipulation.

8         (nn)   "Settlement Fairness Hearing" means the hearing set by the Court to, among

9  other things, consider final approval of the Settlement.

10        (oo)   "Unknown Claims" shall mean any Settled Plaintiffs' Claims which any

11 Plaintiff, the Company, or any Current Apple Shareholders does not know or suspect to exist in

12 his, her, or its favor at the time of the release of such claims and any Settled Defendants' Claims

13 which any Defendant, or the Company does not know or suspect to exist in his, her, or its favor at

14 the time of the release of such claims, which, if known by him, her, or it, might have affected his,

15 her, or its decision(s) with respect to this Settlement.  With respect to any and all Settled Plaintiffs'

16 Claims and Settled Defendants' Claims, the Parties stipulate and agree that, upon the Effective

17 Date of the Settlement, Plaintiffs, Defendants, the Company, and Current Apple Shareholders shall

18 be deemed to have, and by operation of the Judgment shall have, expressly waived any and all

19 provisions, rights, and benefits conferred by any law of any state or territory of the United States,

20 or principle of common law or foreign law, which is similar, comparable, or equivalent to

21 California Civil Code §1542, which provides:

22     A general release does not extend to claims that the creditor or releasing party does
       not know or suspect to exist in his or her favor at the time of executing the release
23     and that, if known by him or her, would have materially affected his or her
       settlement with the debtor or released party.
24

25 Any of Plaintiffs, Defendants, Apple, or Current Apple Shareholders may hereafter discover facts

26 in addition to or different from those which he, she, or it now knows or believes to be true with

27 respect to the Settled Claims but, upon the Court's entry of the Judgment, Plaintiffs, Defendants,

28

Apple, and each of the Current Apple Shareholders shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled any and all Settled Claims without regard to the subsequent discovery or existence of such different or additional facts.   Plaintiffs, Defendants, and the Company acknowledge that the foregoing waiver was separately bargained for and a key element of the Settlement.

## THE SETTLEMENT CONSIDERATION

2.     In consideration for the full settlement and release of all Settled Plaintiffs' Claims against the Released Defendants' Parties and the dismissal with prejudice of the Actions on the terms and conditions set forth in this Stipulation, Defendants and the Company agree that Apple shall adopt and implement the Enhancements identified in Exhibit A hereto in the time and manner specified therein.  The Board, on behalf of the Company, and in a determination made in the good faith exercise of the Board's business judgment, acknowledges and agrees that the filing of, pendency of, and/or settlement demands made in the Actions caused Apple to adopt, implement, and/or maintain the Enhancements.  The Board further acknowledges and agrees that (i) the Enhancements confer substantial benefits upon Apple and its shareholders; and (ii) Apple's commitment to adopt, implement, and/or maintain the Enhancements will serve Apple and its shareholders' best interests and constitutes fair, reasonable and adequate consideration for the release of the Settled Plaintiffs' Claims.

3.     The Company's adoption, implementation, and/or maintenance of the Enhancements shall constitute full and final satisfaction of all of the Settled Plaintiffs' Claims.

## RELEASE OF CLAIMS

4.     The obligations incurred pursuant to this Stipulation are in consideration of the full and final disposition of the Actions as against Defendants and the Releases provided for herein.

5.     Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Plaintiffs, the Company, and by operation of law the Company's shareholders, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever discharged, settled, and released, and shall forever be enjoined from

commencing or prosecuting, any and all Settled Plaintiffs' Claims and Settled Litigation Claims (including Unknown Claims) against the Released Defendants' Parties.

6. Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendants and the Company shall be deemed to have, and by operation of law and of the Judgment, shall have, fully, finally, and forever discharged, settled, and released, and shall forever be enjoined from commencing or prosecuting, any and all Settled Defendants' Claims and Settled Litigation Claims (including Unknown Claims) against the Released Plaintiffs' Parties.

7. Notwithstanding paragraphs 4-6 above, nothing in the Judgment shall impair or restrict the rights of any Settling Party to enforce the terms of this Stipulation or the Judgment.

## PRELIMINARY APPROVAL

8. Following execution of this Stipulation, Plaintiffs shall move in the Federal Court for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit B attached hereto, requesting: (i) preliminary approval of the Settlement; (ii) approval of the form and manner of providing notice of the Settlement to Current Apple Shareholders; and (iii) a date and time for the Settlement Fairness Hearing.

## NOTICE

9. Within ten (10) business days after the entry of the Preliminary Approval Order, the Company shall: (1) post a copy of the Long Form Notice, substantially in the form attached hereto as Exhibit B-1, and the Stipulation (and exhibits thereto) on the Investor Relations page of the Company's website; (2) publish the Summary Notice, substantially in the form attached hereto as Exhibit B-2, in *Investor's Business Daily* and issue a press release with the Summary Notice on GlobeNewswire; and (3) file with the U.S. Securities and Exchange Commission ("SEC") the Long Form Notice and Stipulation (and exhibits thereto) as exhibits to a Form 8-K, subject to any modifications the Court may require as a condition of approval of the Notice. The Summary Notice shall provide a link to the Investor Relations page on the Company's website where the

- 17 -
STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT, AND RELEASE

Long Form Notice and this Stipulation (and exhibits thereto) may be viewed, which page will be maintained through the date of the final settlement hearing.

10.     The Parties believe the content and manner of the notice, as set forth in the above paragraph, constitutes adequate and reasonable notice to Current Apple Shareholders pursuant to applicable law and due process.

11.     The Company shall undertake the administrative responsibility for giving notice to Current Apple Shareholders and shall be solely responsible for paying the costs and expenses related to providing notice of the Settlement as set forth herein or as may otherwise be required by the Court.

12.     At least twenty-one (21) days before the Settlement Fairness Hearing, the Company's counsel shall file a declaration or affidavit confirming compliance with the form, manner and timeliness of notice as approved by the Court.

## **FINAL APPROVAL; DISMISSAL OF THE ACTIONS**

13.     This Settlement is conditioned on the Federal Action and California Action being dismissed with prejudice, and the Demand withdrawn with prejudice.

14.     Plaintiffs shall move for final approval of the Settlement in the Federal Action only, to be followed by the voluntary dismissal of the California Action with prejudice.

15.     If the Settlement contemplated by this Stipulation is approved by the Court, counsel for Federal Plaintiffs and Defendants' Counsel shall jointly request that the Court enter the Judgment, substantially in the form attached hereto as Exhibit C, which will finally approve the Settlement and dismiss the Federal Action with prejudice.

16.     Within ten (10) calendar days of the Court's entry of the Judgment, the parties to the California Action shall file a stipulation with the California Court seeking the dismissal of the California Action with prejudice, and the Demanding Shareholders shall withdraw the Demand with prejudice.

## **ATTORNEYS' FEES AND EXPENSES**

17.     The Company acknowledges and agrees that the Settlement confers substantial benefits upon the Company and its shareholders, and that Plaintiffs' Counsel are entitled to reasonable attorneys' fees and expenses in an amount commensurate with the value of the Settlement's benefits.  The Parties agree that, subject to Court approval, Apple shall pay or cause to be paid attorneys' fees and expenses to Plaintiffs' Counsel in the agreed amount of $6,000,000 (the "Fee and Expense Amount").

18.     The Fee and Expense Amount or such other amount as may be approved by the Court shall constitute final and complete payment for Plaintiffs' attorneys' fees and expenses in connection with the Actions.

19.     The Fee and Expense Amount shall be paid to an account designated by Plaintiffs' Counsel within forty-five (45) days of entry of a final order and judgment approving the Settlement and fee and expense amount, notwithstanding the existence of any collateral attacks on the Settlement, including, without limitation, any objections or appeals.

20.     In the event that the Judgment fails to become Final as defined in paragraph 1(v) herein or the amount of attorneys' fees approved is later reduced on appeal or by the Court, then Plaintiffs' Counsel shall be severally obligated to make appropriate refunds or repayments to Apple or its insurers of any attorneys' fees and expenses previously paid and any interest earned on the balance, as appropriate, within fifteen (15) business days from receiving notice from Defendants' Counsel of written payment instructions.  In the event Plaintiffs' Counsel fails to make such refunds or repayments as provided in this paragraph 20, Plaintiffs' Counsel shall also be severally obligated to reimburse Apple and/or its insurers of reasonable attorneys' fees and expenses they incur to enforce this provision and obtain such refunds or repayments.

21.     Plaintiffs' Counsel shall allocate the Fee and Expense Amount as agreed amongst themselves.  Defendants, the Company, and their respective counsel shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' Counsel of the Fee and Expense Amount.  Any dispute regarding the allocation of fees or expenses among Plaintiffs'

Counsel shall have no effect on the Settlement or the Releases.  Any allocation disputes will be finally resolved by the Mediator pursuant to expedited arbitral procedures determined by the Mediator.

22.     The effectiveness of the Settlement, the Releases, and the Parties' obligations under the Settlement (except with respect to the payment of attorneys' fees and expenses) shall not be conditioned on the resolution of, nor any ruling regarding, any Fee and Expense Amount.

23.     Plaintiffs' Counsel may apply to the Court for payment of a service award to each of the Plaintiffs in the amount of $5,000 each ("Service Awards"), only to be paid upon Court approval, and to be paid solely from, and out of, the Fee and Expense Amount.  The Defendants agree not to oppose any application for payment of the Service Awards.  The failure of the Court to approve the requested Service Awards, in whole or in part, shall have no effect on the Settlement set forth in this Stipulation.  Neither Apple nor any of the Defendants shall be liable for any portion of any Service Award.

## CONDITIONS OF SETTLEMENT AND EFFECT OF TERMINATION

24.     The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a)     the Court has approved the Settlement as described herein, following notice to Current Apple Shareholders and a hearing, and entered the Judgment, substantially in the form set forth in Exhibit C attached hereto, and the Judgment has become Final;

(b)     the California Action has been dismissed with prejudice; and

(c)     the Demand has been withdrawn with prejudice.

25.     If any of the conditions specified in paragraph 24 are not met, then:  (a) the Settlement and the relevant portions of this Stipulation shall be canceled, unless the Parties mutually agree to proceed with an alternative or modified Stipulation, and execute and submit the alternative or modified Stipulation for Court approval; (b) the Parties shall revert to their respective litigation positions in the Actions prior to April 1, 2023; (c) the terms and provisions of the Stipulation, with the exception of (i) this paragraph 25, and (ii) paragraphs 20, 26, 36, 44, and 45

- 20 -

1    hereof, shall have no further force and effect with respect to the Parties and shall not be used in

2    the Actions or in any other proceeding for any purpose, and the Parties shall proceed in all respects

3    as if this Stipulation had not been entered; and (d) the Judgment and any other order entered by

4    the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro*

5    *tunc*.

6                          **<u>NO ADMISSION OF WRONGDOING</u>**

7          26.    Neither this Stipulation (whether or not consummated), including the exhibits

8    hereto, the negotiations leading to the execution of this Stipulation, nor any proceedings taken

9    pursuant to or in connection with this Stipulation and/or approval of the Settlement (including any

10   arguments proffered in connection therewith):

11          (a)    shall be offered against any of the Released Defendants' Parties as evidence

12   of, or construed as, or deemed to be evidence of any presumption, concession, or admission by

13   any of the Released Defendants' Parties with respect to the truth of any fact alleged by Plaintiffs

14   or the validity of any claim that was or could have been asserted or the deficiency of any defense

15   that has been or could have been asserted in the Actions or in any other litigation, or of any liability,

16   negligence, fault, violation of law, or other wrongdoing of any kind of any of the Released

17   Defendants' Parties, or in any way referred to for any other reason as against any of the Released

18   Defendants' Parties, in any arbitration proceeding or other civil, criminal, or administrative action

19   or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this

20   Stipulation;

21          (b)    shall be offered against any of the Released Plaintiffs' Parties as evidence

22   of, or construed as, or deemed to be evidence of any presumption, concession, or admission by

23   any of the Released Plaintiffs' Parties that any of the Released Plaintiffs' Parties' claims are

24   without merit, that any of the Released Defendants' Parties had meritorious defenses, or that any

25   monetary or non-monetary recovery under the Complaints would not have exceeded the actual

26   recovery or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any

27   way referred to for any other reason as against any of the Released Plaintiffs' Parties, in any

28

1 arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than

2 such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

3         (c)         shall be construed against any of the Released Parties as an admission,

4 concession, or presumption that the consideration to be given hereunder represents the amount

5 which could be or would have been recovered after trial; *provided, however*, that if this Stipulation

6 is approved by the Court, the Parties, the Released Parties, and their respective counsel, may refer

7 to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms

8 of the Settlement.

9                         **<u>MISCELLANEOUS PROVISIONS</u>**

10        27.    All of the exhibits attached hereto are hereby incorporated by reference as though

11 fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or

12 inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto,

13 the terms of this Stipulation shall prevail.

14        28.    The Parties intend this Stipulation and the Settlement to be a final and complete

15 resolution of all disputes asserted or which could be asserted by Plaintiffs against the Released

16 Defendants' Parties with respect to the Settled Plaintiffs' Claims.  Accordingly, the Parties and

17 their counsel agree not to assert in any forum that the Actions were brought by Plaintiffs or

18 defended by Defendants in bad faith or without a reasonable basis.  The Parties agree that each

19 Party and their Counsel have complied with the applicable requirements of good faith litigation

20 and that no action, allegation, position taken, or filing was undertaken or made in bad faith or in

21 violation of Rule 11 of the Federal Rules of Civil Procedure or comparable provision of state law.

22 The Parties agree that the Settlement Consideration and the other terms of the Settlement were

23 negotiated at arm's-length and in good faith by the Parties, and reflect the Settlement that was

24 reached voluntarily after extensive negotiations and consultation with experienced legal counsel,

25 who were fully competent to assess the strengths and weaknesses of their respective clients' claims

26 or defenses.

27

28

STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT, AND RELEASE

29.     Defendants and their counsel shall retain their right to deny that Defendants committed, or aided and abetted in the commission of, any violation of law or duty or engaged in any wrongful acts whatsoever, but neither Defendants, the Company, or their respective counsel will, in any statement made to any media representative (whether or not for attribution), assert that the Actions were commenced or prosecuted in bad faith, nor will they deny that the Actions were commenced and prosecuted in good faith and are being settled voluntarily after consultation with competent legal counsel.  Likewise, Plaintiffs and their counsel shall retain their right to maintain that their claims have merit, but neither Plaintiffs nor their counsel will, in any statement made to any media representative (whether or not for attribution), assert that the Actions were defended in bad faith, nor will they deny that the Actions were defended in good faith and are being settled voluntarily after consultation with competent legal counsel.  In all events, none of the Parties shall make any accusations of wrongful or actionable conduct by any Party concerning the prosecution, defense, and resolution of the Actions, nor shall they otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

30.     The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed on behalf of each of the Parties (or their successors-in-interest).

31.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

32.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Federal Court, and the Federal Court shall retain exclusive jurisdiction for the purpose of implementing and enforcing the terms of this Stipulation.

33.     The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

34.     This Stipulation and its exhibits constitute the entire agreement among the Parties concerning the Settlement and this Stipulation and its exhibits, and supersede all prior or contemporaneous oral or written agreements, understandings, or representations among the Parties

with respect to the subject matter hereof.  All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party concerning this Stipulation or its exhibits other than those contained and memorialized in such documents.

35.    The Parties agree that within sixty (60) days of the Effective Date, they will return to the producing party all documents and other discovery material obtained from such producing party in any manner in connection with the Actions, including all documents produced by any Party whether formally or informally in connection with the mediation ("Produced Material"), or destroy all such Produced Material; provided, however, that the Parties and their counsel shall be entitled to retain all filings, court papers, hearing transcripts, and attorney work product.

36.    Subject to applicable court rules, all designations and agreements made and orders entered during the course of the Actions relating to the confidentiality of documents or information shall survive this Settlement. Nothing in this Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including without limitation, the attorney-client privilege, the joint defense privilege, or work product protection.

37.    This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tiff image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

38.    This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

39.    The construction, interpretation, operation, effect, and validity of this Stipulation and all documents necessary to effectuate it shall be governed by the laws of the State of California without regard to conflicts of law rules, except to the extent that federal law requires that federal law govern.  The exclusive forum for the adjudication of any disputes arising under this Stipulation shall be the United States District Court for the Northern District of California.  Each Party accepts and consents to jurisdiction and waives any objection to venue in the identified court.

40.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

41.     Counsel for the Parties agree to cooperate fully with one another in seeking Court approval of the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

42.     The Stipulation shall be treated as jointly drafted and will not be construed against any Party as the drafter.

43.     Any Party may give notice or service to another Party under this Stipulation.  Such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, facsimile, or email transmission, with confirmation of receipt.  Notice shall be provided as follows:

If to Plaintiffs:                           Robbins LLP
                                            Attn:  Craig W. Smith
                                            5060 Shoreham Place, Suite 300
                                            San Diego, CA 92122
                                            Telephone:  (619) 525-3990
                                            E-mail:  csmith@robbinsllp.com

                                            Glancy Prongay & Murray LLP
                                            Attn: Robert Prongay
                                            1925 Century Park East, Suite 2100
                                            Los Angeles CA 90067
                                            Telephone: (310) 201-9150
                                            E-mail: rprongay@glancylaw.com

If to Defendants or Company:                Orrick, Herrington & Sutcliffe LLP
                                            Attn:  James N. Kramer, Esq.
                                            405 Howard Street
                                            San Francisco, CA  94105
                                            Telephone:  (415) 773-5900
                                            E-mail:  jkramer@orrick.com

44.     Except as otherwise provided herein, each Party shall bear its own costs.

45.     Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, and drafts in connection with the Stipulation confidential.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of February 8, 2024.

| **Co-Lead Counsel for Federal Plaintiffs** | **Counsel for Defendants** |
|---|---|
| By: _____ | By: _____ |
| Brian J. Robbins | James N. Kramer |
| Craig W. Smith | Alexander K. Talarides |
| Shane P. Sanders | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| ROBBINS LLP | 405 Howard Street |
| 5060 Shoreham Place, Suite 300 | San Francisco, CA 94105 |
| San Diego, CA 92122 | Telephone: (415) 773-5700 |
| Telephone: (619) 525-3990 | Facsimile: (415)773-5759 |
| Facsimile: (619) 525-3991 | E-mail: jkramer@orrick.com |
| E-mail: brobbins@robbinsllp.com | atalarides@orrick.com |
| csmith@robbinsllp.com | |
| ssanders@robbinsllp.com | *Counsel for Individual Defendants and Nominal Defendant Apple Inc.* |

By: _____
Joel E. Elkins
WEISS LAW LLP
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: (310) 208-2800
Facsimile: (310) 209-2348
jelkins@weisslawllp.com

David C. Katz
Mark D. Smilow
Joshua Rubin
WEISS LAW LLP
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
E-mail: dkatz@weisslawllp.com
msmilow@weisslawllp.com
jrubin@weisslawllp.com

**Counsel for the Board**

By: _____
Douglas W. Greene
Genevieve G. York-Erwin
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
E-mail: dgreene@bakerlaw.com
gyorkerwin@bakerlaw.com

*Counsel for the Board of Directors of Apple Inc.*

**Co-Lead Counsel for State Plaintiffs**

STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT, AND RELEASE

1

By: John C. Herman

2   HERMAN JONES LLP
    3424 Peachtree Road, N.E., Suite 1650
3   Atlanta, Georgia 30326
    Telephone: (404) 504-6500
4   E-mail: jherman@hermanjones.com

5   *Counsel for State Action Plaintiff Tim*
    *Himstreet*
6

7   By: Daniella Quitt
    GLANCY PRONGAY & MURRAY LLP
8   745 Fifth Avenue New York, NY 10151
    Telephone: (212) 935-7400
9   E-mail: dquitt@glancylaw.com

10  Robert V. Prongay Pavithra Rajesh
    GLANCY PRONGAY & MURRAY LLP
11  1925 Century Park East, Suite 2100
    Los Angeles, CA 90067
12  Telephone: (310) 201-9150
    E-mail: rprongay@glancylw.com
13  prajesh@glancylaw.com

14  *Counsel for State Action Plaintiff Steven Hill*

15

16  **Counsel for Demanding Shareholders**

    By:
17  Steven J. Purcell
    PURCELL & LEFKOWITZ LLP
18  369 Lexington Avenue
    3rd Floor
19  New York, NY 10017
    Telephone: (212) 725-1000
20  Facsimile: (212) 725-0270
    E-mail: spurcell@pjlfirm.com
21

22  *Counsel for Demanding Shareholders*
    *Augustin Sacks and Gerard Bernales*

23

24

25

26

27

28

- 27 -

STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT, AND RELEASE

# EXHIBIT A-1

## GOVERNANCE CONSIDERATION

Apple shall adopt and implement the following governance and oversight enhancements (the "Enhancements") within 90 days of final settlement approval.  The Enhancements shall remain in effect for not less than four (4) years.  Apple's board of directors (the "Board") shall oversee and confirm the timely adoption and effective implementation of the Enhancements.

In the event the Board determines, based upon sound legal advice, that any element of the Enhancements conflicts with applicable law or regulation, the Board may, in the reasonable and good faith exercise of its business judgment, modify or eliminate provisions of the Enhancements as necessary to conform to the law or regulation.  The Board will endeavor to modify or replace any provision found to conflict with law or regulation with measures designed to accomplish the same or similar objectives of the Enhancements.  Should this occur, the Board shall describe and explain any such changes in the next periodic filing with the U.S. Securities and Exchange Commission.

1. **Enhanced Risk Oversight**

- The Company will amend the Risk Oversight Committee Charter to include a requirement that the Committee review and discuss material regulatory compliance issues relating to the Company's products, including risks related to performance, manufacturing defects and safety, and the steps management has taken to monitor and mitigate potential product regulatory compliance risks.

- The Chief Compliance Officer will become a member of the Risk Oversight Committee, attend the meetings thereof and, if necessary, report to the Audit and Finance Committee on the matters relating to her duties.

- The Company will ensure that data (including in-store and third-party repair data, social media and other sources) bearing upon Performance Management will be actively and regularly monitored, compiled, and made available to leaders on the business teams responsible for product lines, who will evaluate, and, as appropriate, address or escalate for further review and oversight, real-time trends and issues.

  - To the extent potentially significant or material business, compliance, financial, reputational or other risks regarding Performance Management are suggested by the frequency of repair and/or replacement events, the leaders on the responsible business teams will consider recommendations for further investigation and evaluation, enhanced customer communication, and/or customer-oriented remedial action;

- The Company shall establish a protocol for report evaluation, recommendation, and escalation, as appropriate.  The protocol will incorporate the following provisions:

  - Upon receipt of reports bearing on Performance Management and the related customer experience, leaders on the business teams responsible for affected product lines shall evaluate key drivers to determine whether potentially

significant or material business, compliance, financial, reputational or other risks warrant further evaluation, escalation, and decision-making, including, but not limited to, recommendations for further investigation and evaluation, enhanced customer communication, and/or customer-oriented remedial action;

o   In the event that leaders on the business teams responsible for product lines determine further action may be necessary, they shall prepare a written report reflecting their evaluation and recommendations.  Any further investigation or evaluation deemed necessary shall be undertaken immediately and completed within a reasonable time, and the results considered and included in a final escalation report, which shall be provided to the Chief Compliance Officer and Chief Operations Officer.

o   The Chief Operations Officer (COO), or a person designated by the COO, shall work directly with the relevant business teams to timely develop and implement an action plan designed to address and resolve or mitigate business, compliance, financial and/or reputational risks arising from product field performance and related customer experience issues.

o   Where, as referenced above, material regulatory compliance issues relating to Performance Management are found by the relevant business teams to be significant or potentially material, or other escalation criteria established by the Risk Oversight Committee are met, escalation reports setting out proposed remedial responses shall be prepared by the business teams in conjunction with the Chief Compliance Officer and timely presented to the Risk Oversight Committee and, as appropriate, senior executives.

o   The Risk Oversight Committee shall review and evaluate the proposed remedial response in the escalation report and make any further recommendations as the Committee deems necessary and appropriate to ensure timely and effective risk management and mitigation.

2. **Enhanced Oversight of iOS Update Transparency**

- Before release of an iOS update involving changes to Performance Management, the Chief Compliance Officer will review iPhone release notes on that topic in order to ensure accurate, timely, and transparent disclosures of such changes.

- For purposes of this Settlement, "Performance Management" means dynamically managing performance peaks based in part on the chemical age of an iPhone's battery.

- The Chief Compliance Officer shall work with the appropriate business team leaders to ensure that Apple's website appropriately identifies and describes the key components of such release notes relating to Performance Management.

Exhibit A

3.  **Extension and Expansion of Previously Expired Customer Transparency Commitments**

- Apple shall maintain easily accessible and prominent webpage(s) that provide clear and conspicuous information to consumers about lithium-ion batteries, unexpected shutdowns, and Performance Management, as defined above. The webpage(s) will provide guidance to consumers on steps they can take to maximize battery health and also describe the operation of Performance Management and its impact on iPhone battery and performance.

- In the event a future iOS update materially changes the impact of Performance Management, Apple shall notify consumers in a clear and conspicuous manner of those changes in the installation notes for the update.

- Apple will provide information to consumers in the iPhone user interface about battery health, and will notify consumers of the option to service the battery once the performance of the battery has become significantly degraded.

- Apple will provide its consumer-facing staff with all necessary education and training regarding: (i) the information in the webpage(s) described above; (ii) the iPhone user interface described above; and (iii) where to find further information on Apple webpage(s) or interface relating to Performance Management.

- Apple's General Counsel, on an ad hoc basis, will report to the Audit and Finance Committee on any material compliance issues related to the above commitments

4.  **Enhanced Investor Disclosure Oversight**

- Apple will adopt and implement a written policy that requires the co-Chairs of the Disclosure Committee to review transcripts of each earnings call and make appropriate recommendations, as necessary, with respect to correction, clarification, further disclosure or explanation, or other actions. The adoption of this policy, and any recommendation made and adopted pursuant to it, do not constitute, and may not be construed as, an admission that any previous statement by any past or present employee, officer, or director of the Company was false or misleading.